[Cite as *State v. Jemison*, 2014-Ohio-3057.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY   COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 25967 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 12-CR-887/4 |
| v. | : | |
| | : | |
| EDWARD J. JEMISON | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

· · · · · · · · · ·

O P I N I O N

Rendered on the 11th day of July, 2014.

· · · · · · · · · ·

MATHIAS H. HECK, JR., by APRIL F. CAMPBELL, Atty. Reg. #0089541, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

DANIEL O'BRIEN, Atty. Reg. #0031461, 131 North Ludlow Street, 1210 Talbott Tower, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

· · · · · · · · · · · ·

HALL, J.

{¶ 1}    Edward J. Jemison appeals from the trial court's revocation of community

control and its imposition of an eighteen-month prison term.

{¶ 2} In two assignments of error, Jemison raises three issues. First, he contends the trial court erred in having the revocation proceedings transferred from the judge who placed him on community control. Second, he claims the trial court engaged in improper ex parte communications with that judge and with Ohio Supreme Court personnel. Third, he asserts that the trial court erred in revoking community control before he was tried on a new charge that precipitated the revocation proceeding.

{¶ 3} The record reflects that a grand jury indicted Jemison in June 2012 on one count of heroin possession, a third-degree felony. He later pled guilty, and the trial court imposed community control sanctions in September 2012. (Doc. #29). On April 3, 2013, a notice was filed advising Jemison of alleged community control violations and possible revocation. (Doc. #31). The revocation issue arose after he was arrested and charged with engaging in a drug-related pattern of corrupt activity in Montgomery C.P. No. 2013 CR 1004/1. The notice alleged the following violations of his rules of supervision:

Rule #1, "I shall refrain from violation of any law (Federal, State, and City). I shall get in touch immediately with my Probation Officer if arrested or questioned by a law-enforcement officer." You were arrested on 03/27/2013 for Engaging in a Pattern of Corrupt Activity (F1) by the Miami Township Police Department.

Rule #4, "I shall work regularly at a lawful occupation and support my legal dependents, if any, to the best of my ability. When out of work, I shall notify my Probation Officer at once. I shall consult my Probation Officer prior to job changes." You have failed to maintain and obtain verifiable employment.

Rule #7, "I shall accomplish all case plan objectives which are now and will be set for me throughout my supervision." You have failed to complete 200 hours of community service work, obtain your GED, and comply with your "No Breaks" Status.

(*Id*. at 2).

{¶ 4} The next docket entry after the foregoing notice is an April 4, 2013 "Transfer of Assignment to Another Judge." (Doc. #32). This entry transferred Jemison's revocation case from Judge Michael Tucker, who had placed him on community control, to Judge Barbara Gorman, who had been assigned his new corrupt-activity case. Jemison subsequently appeared before Judge Gorman for an October 3, 2013 revocation hearing. At the conclusion of the hearing, the trial court revoked community control and imposed an eighteen-month prison sentence. (Hearing Tr. at 92; Termination Entry, Doc. # 42). This appeal followed.

{¶ 5} In his first assignment of error, Jemison contends his due process and equal protection rights were violated when the above-captioned case was transferred from Judge Tucker to Judge Gorman in alleged contravention of Mont. C.P. Loc.R. 1.19. He also argues that Judge Gorman engaged in improper ex parte communication with Judge Tucker and with one or more Ohio Supreme Court employees.

{¶ 6} Jemison's first assignment of error lacks merit for at least two reasons. First, the record in this case reflects (1) no objection to the transfer of his revocation case from Judge Tucker to Judge Gorman and (2) no ex parte communication between Judge Gorman and Judge Tucker or anyone from the Ohio Supreme Court. Because the record reveals no objection to the transfer, Jemison waived that issue on appeal. He also cannot prevail on his ex parte communication argument because the record does not portray the error he alleges.

{¶ 7} In an effort to overcome these obstacles, Jemison has attached exhibits to his appellate brief. They include (1) documents filed below in the revocation case and (2) documents from Jemison's new corrupt-activity case. With regard to the new case, he has attached (1) a copy of his corrupt-activity indictment (Exh. B), (2) a motion to be removed from electronic home detention (Exh. E), (3) an order regarding bail (Exh. F), (4) his motion for severance of charges from co-defendants and motion for recusal of Judge Gorman and "return" of his case to Judge Tucker (Exh. G), (5) a supplemental motion regarding severance and recusal (Exh. H), and (6) a transcript excerpt from a suppression hearing (Exh. I).

{¶ 8} On May 1, 2014, the State moved to strike the foregoing exhibits on the basis that they are not part of the record in this revocation case. Rather, they are from the corrupt-activity case. We agree with the State that Exhibits B, E, F, G, H, and I are not properly before us.[1] Those materials are not part of the record in the present revocation case, and the record was never supplemented with them. Therefore, we cannot consider exhibits attached to Jemison's appellate brief that involve proceedings in the corrupt-activity case.

---

[1] We hereby sustain the State's motion to strike insofar as it pertains to Exhibits B, E, F, G, H, and I attached to Jemison's appellate brief. We overrule the State's motion, however, insofar as it pertains to Exhibits A, C, and D, which are copies of documents filed below in the present case. Although the State contends it was unnecessary for Jemison to attach copies of such documents to his appellate brief, we presume he did so for our convenience and see no harm in it.

{¶ 9} Even if we were to consider those materials, Jemison's assignment of error would fail for a second reason: the materials do not establish any reversible error. With regard to the local court rule, Jemison briefly mentioned it in his motion regarding severance of his corrupt-activity charge from charges against co-defendants in that case. (Appellant's brief, Exh. G). He argued that the local rule was "inapplicable" and that Judge Tucker should preside over the corrupt-activities case and the revocation proceeding. With regard to the revocation proceeding, we agree that Mont. C.P. Loc.R. 1.19 had no applicability. With certain exceptions, it requires random initial assignment of cases upon approval of felony charges. The transfer of the revocation case from Judge Tucker to Judge Gorman was not an initial assignment after the approval of felony charges. But we also see nothing in the rule prohibiting the transfer.[2]

{¶ 10} As for Judge Gorman's allegedly improper ex parte communications, two exhibits attached to Jemison's appellate brief address them. First, in a supplemental motion filed in the corrupt-activity case, he referred to a hearing in which Judge Gorman claimed she intended to speak to Judge Tucker and someone from the Ohio Supreme Court about the assignment of his case. (Appellant's brief, Exh. H). Second, an excerpt from the hearing transcript in the corrupt-activity case also is attached to Jemison's brief. (*Id*. at Exh. I). During that hearing, Judge Gorman explained that she intended to check with someone from the Ohio Supreme Court about whether it would be ethical for her to speak to Judge Tucker. If the Ohio Supreme Court representative approved, Judge Gorman explained that she then would confer with Judge Tucker about Jemison's objections to the assignment of his case. Based on these exhibits, we see no

---

[2] The transfer order itself does not explicitly identify the source of authority for the transfer. It notes only that the transfer is being made "due to a co-defendant with a lower case number." (Doc. #32). In any event, Jemison's appellate brief fails to establish a due process or equal protection violation, which is his assigned error.

improper ex parte communications. As an initial matter, Jemison's materials fail to establish that Judge Gorman actually did speak to someone from the Ohio Supreme Court or to Judge Tucker. But even if she did, we see nothing improper about such communication. A judge contacting the Ohio Supreme Court to clarify an ethical issue is not an improper ex parte communication. Nor do we see any problem with Judge Gorman conferring with Judge Tucker about the procedural assignment of a case. *See e.g.* Code of Judicial Conduct Rule 2.9(3) ("A judge may consult with court staff and court officials whose functions are to aid the judge in carrying out the judge's adjudicative responsibilities, or with other judges, provided the judge makes reasonable efforts to avoid receiving factual information that is not part of the record and does not abrogate the responsibility personally to decide the matter[.]"). The official comments following Code of Judicial Conduct Rule 2.9 explicitly recognize that "[a] judge may consult ethics advisory committees, outside counsel, or legal experts concerning the judge's compliance with this code" and that "[a] judge may consult with other judges on pending matters." The first assignment of error is overruled.

{¶ 11} In his second assignment of error, Jemison contends the trial court violated his due process and equal protection rights by revoking community control where the record fails "to demonstrate any reasonable basis for the revocation of appellant's [community control] prior to his trial on the newly indicted charge[.]"

{¶ 12} We review a trial court's revocation of community control for an abuse of discretion. *State v. Jackson,* Montgomery App. No. 23458, 2010–Ohio–2836, ¶ 56. "Abuse of discretion has been defined as an attitude that is unreasonable, arbitrary, or unconscionable. It is to be expected that most instances of abuse of discretion will result in decisions that are simply

unreasonable, rather than decisions that are unconscionable or arbitrary." *Id*.

{¶ 13}   As set forth above, Jemison was charged with violating conditions of community control supervision by (1) being arrested for engaging in a pattern of corrupt activity and failing to notify his probation officer immediately, (2) failing to obtain and maintain verifiable employment, and (3) failing to complete 200 hours of community service and to obtain his GED. On appeal, Jemison contends the State abandoned the first violation at the revocation hearing. With regard to the others, he argues that he had up to five years to complete community service, get a job, and obtain a GED. Because five years had not passed, Jemison contends the trial court lacked any basis for revocation. He also maintains that the revocation action would not even have been brought but for his arrest on the corrupt-activity charge. He reasons that "without a conviction on the new charge, it is a travesty of justice to have revoked [him] on this record[.]" (Appellant's brief at 9).

{¶ 14}   Having reviewed the record, we see no abuse of discretion in the trial court's revocation decision. In its ruling, the trial court recognized that Jemison's arrest on a new charge precipitated the revocation filing. The trial court did not rely on the fact of the arrest, however, in support of its decision. Nor did it rely on Jemison's alleged failure immediately to notify his probation officer of the arrest. The trial court also did not rely on Jemison's failure to complete community service. Instead, the trial court based its revocation decision on his failure to obtain employment, his failure to obtain a GED, and his no-breaks status. In support of its decision, the trial court reasoned:

> Defense counsel is correct about one thing, the arrest was the precipitating factor in filing the revocation. I don't think there's any question about that. What

happens at that point?

People are expected, contrary to the up to five years, up to five years is the longest period of time. When someone is placed on community control sanctions the directive is these are the things you must do. And no break status in my mind means no breaks.

People are put on no breaks primarily when they have had previous community control sanctions where they have not been successful. Where they have either been sent to prison, where they have been sent to jail in lieu of prison, where they have incomplete terminations. That's what no breaks is. That's the status that Mr. Jemison was under and based upon that prior history his directive has to be that he will work on these things appropriately.

Now, had Mr. Jemison not been arrested on March 28th of 2013, perhaps this would not have come to the Court's attention. But once that is brought up the other issues, the other conditions that the probationer is to be completing are brought to the Court's attention.

This is an evidentiary hearing. The Defendant is notified of what the violations are and he must present sufficient proof or the State must present their case as to how these were violated and then the Defendant has the opportunity to counter that with other proof.

In this case the community control sanctions was partly done. And that by itself would not be enough I think with doing 140 hours to revoke the Defendant. However, I would note that apparently in Court we see a sheet that has the hours,

but Mr. Mirovsky testified uncontroverted that on March 7th, 2013 he told the Defendant he needed proof to show that he was attending community service work.

And on March 13th, 2013 he also said he needed to provide proof of his community service work and apparently Mr. Jemison didn't think he had to do that. That bothers me as far as an attitude problem, but that is not sufficient to revoke and I do not find that violation. Since he did over half of the time, that's not enough to revoke him.

However, Number 4, he's supposed to get a job. Now, the only evidence I have before me is that he was ordered to go to Goodwill Easter Seals, their class on November 8th, 2012. He did not attend that or any other class or activity by the Probation Department indicating that the Defendant was looking for a job.

That's even more important in light of the fact that somehow he came up with $480 that apparently his mom or his girlfriend was supporting him with and he was not complying with the Montgomery County Support Enforcement Agency in Set Number 7085318454 and 7072389443.

So in addition to finding a job to set someone on a law abiding road, there was the requirement that there were children who were not being supported. And there is no evidence in this record other than Mr. Jemison's self-serving statement that he went on four interviews and had an interview on May 1st (sic) with Tiffany Taylor, something that I find hard to believe.

And based upon the fact that Mr. Jemison's third felony, that he is looking

at prison time and that he did not follow through with the directive to Goodwill Easter Seals' class, which is an excellent class, that's who -- I send people there. No paperwork, no nothing, no real attempt to get a job. That is an absolute violation of his community control sanctions.

As far as school, again according to the records we have, on October 18th, 2012 we have a letter that Mr. Jemison went to orientation. That's what Mr. Mirovsky's records reflect. There is no other documentation of Mr. Jemison attending one class.

And again, based upon the fact that he has not followed through with his seeking a job, that he does not have class attendance slips, grades. I mean, we're talking about five months. Most people I know get verification, there are quarterly grades, there are some type of tests, there is something to indicate that the Defendant attended school. And his self—serving statement to me is not enough to overcome the presumption that he never went back after orientation.

So I find that the Defendant did in fact violate the condition of community control sanctions that he work regularly at a lawful occupation and support his legal dependents to the best of his ability. By not going to that Goodwill Easter Seals' class and by not having any documentation whatsoever of a job. He clearly violated that condition.

As far as the failing the 200 hours of community service work, having done 140 hours, I do not find he violated that. He could have finished that within a reasonable time.

I believe he violated obtaining, working toward getting his GED because all I have before me is one letter that corresponds with what the Probation Department has and nothing else.

Those two conditions and those two violations perhaps with someone who had not been on community control sanctions before might not be enough— I might be inclined because it's basically a judgment call on my part.

I might say, well this is your first time here, let's give you a little bit more time. This is your third time. And the second time, I'm not sure what happened the first time, but the second time you were on community control sanctions you did not perform, you were sent to Monday. Either didn't succeed there or were violated after that fact and did time in the Montgomery County Jail and that was an unsuccessful termination.

In light of those and the facts that you were no breaks, in my book no breaks means no breaks. So I'm finding that you have violated community control sanctions in Case Number 2012CR0887/4.

(Hearing Tr. at 82-86)

{¶ 15} The foregoing explanation reflects a reasonable exercise of the trial court's discretion. Contrary to Jemison's argument on appeal, we see nothing improper about the fact of his arrest precipitating the revocation proceeding. Regardless of what prompted the filing of a notice of revocation, the issue before the trial court was whether Jemison had violated the conditions of community control supervision in contravention of his no-breaks status. Evidence presented at the revocation hearing reasonably supports a finding that he did violate those conditions by failing to make reasonable efforts to obtain a job or a GED in roughly seven

months on community control. Jemison's probation officer had no documentation of him ever attending a job-orientation class through Goodwill, and Jemison admitted that he had submitted just four job applications in seven months. (*Id*. at 17-18, 63-64). Although he claimed to have an interview scheduled the day after his arrest, the trial court disbelieved that testimony.[3] With regard to obtaining a GED, the probation officer had no evidence that Jemison had done anything in seven months beyond attending an initial orientation session. (*Id*. at 20, 46-47).

{¶ 16} In our view, the trial court reasonably concluded that Jemison had made no meaningful effort to get a job or a GED. The trial court also reasonably concluded that this lack of effort constituted a violation of his community control supervision conditions, particularly in light of his no-breaks status. In arguing otherwise, Jemison cites the probation officer's agreement with defense counsel on cross examination that he had five years to accomplish all of the requirements in his conditions. (*Id*. at 43). He relies on this testimony to argue that he had five years to get a job, to perform community service, and to obtain a GED. We disagree. Notwithstanding the probation officer's testimony, the fact that Jemison was on five years of community control did not mean he could wait years, or even months, before attempting to accomplish his requirements. Such an interpretation of the requirements is not reasonable. In our view, the trial court did not abuse its discretion in finding that Jemison violated his conditions of supervision by not making any real effort to comply with them. Accordingly, the second assignment of error is overruled.

{¶ 17} The judgment of the Montgomery County Common Pleas Court is affirmed.

---

[3] When making its decision, the trial court referred to "Mr. Jemison's self-serving statement that he went on four interviews" and had one interview scheduled at the time of his arrest. Jemison actually testified that he submitted four job applications, not that he went on four interviews.

. . . . . . . . . . . . .

FROELICH, P.J., and DONOVAN, J., concur.

Copies mailed to:

Mathias H. Heck
April F. Campbell
Daniel J. O'Brien
Hon. Barbara P. Gorman